## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF ALABAMA
## EASTERN DIVISION

| | | |
|---|---|---|
| **NICHOLAS BARNES,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **Civil Action No.: 3:24-cv-00512** |
| | ) | |
| **EAST ALABAMA MEDICAL** | ) | |
| **CENTER FOUNDATION,** | ) | |
| **d/b/a EAST ALABAMA** | ) | |
| **MEDICAL CENTER,** | ) | |
| | ) | |
| **Defendant.** | ) | |

## PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANT'S *MOTION FOR SUMMARY JUDGMENT*

Plaintiff, Nicholas Barnes (hereinafter "Plaintiff") submits this response brief in opposition to East Alabama Medical Center Foundation d/b/a East Alabama Medical Center's (hereinafter "Defendant") Motion for Summary Judgment (Doc. 21) and its accompanying brief (Doc. 22). Defendant's Motion for Summary Judgment ("Motion") is due to be denied for the reason set forth herein.

/s/ Jon-Kaden Mullen
D. Jeremy Schatz
Jon-Kaden Mullen
*Attorneys for Plaintiff*

**OF COUNSEL:**
Virtus Law Group
2017 Morris Avenue, Ste 100
Birmingham, AL 35203
js@vlgal.com
jm@vlgal.com

## **TABLE OF CONTENTS**

RESPONSE TO MOVEANT'S STATEMENT OF FACTS ................................. 3

PLAINTIFF'S STATEMENT OF additional MATERIAL FACTS .................... 11

summary judgment standard ................................................................... 13

LEGAL ANALYSIS .................................................................................. 14

   I.    DEFENDANT IS NOT ENTITLED TO SUMMARY JUDGMENT ON PLAINTIFF'S SEXUAL HARRASSMENT CLAIM .................................... 14

      A.   URSULA'S HARASSMENT WAS BASED ON PLAINTIFF'S SEX........................ 14

      B.   PLAINTIFF HAS PRODUCED SUFFICIENT EVIDENCE THAT THE HARASSMENT OF SEVERE AND PERVASIVE. ......................................................... 15

      C.   PLAINTIFF HAS PRODUCED SUFFICIENT EVIDENCE THAT DEFENDANT IS LIABLE FOR URSULA'S SEXUAL HARASSMENT. ............................................. 17

   II.   PLAINTIFF HAS PRESENTED SUBSTANTIAL EVIDENCE THAT DEFENDANT RETALIATED AGAINST HIM. ........................................... 18

CONCLUSION ............................................................................. 21

## RESPONSE TO MOVEANT'S STATEMENT OF FACTS

1.    Admitted.

2.    Denied as stated. While Defendant may have a written policies and procedures regarding discriminatory conduct (including sexual harassment and retaliation), Plaintiff was subjected to sexual harassment and retaliation, and Defendant took no affirmative actions to prevent said discriminatory conduct. (Doc. 23-1, p. 21, tpp 75:2-76:16.);(Doc. 23-1, p. 26, tp 95:11-20).  (Doc. 23-1, p. 23, tpp 85:4-17; 86:6-7; 87:17-22).

3.    Admitted.

4.    Admitted.

5.    Admitted in part. Plaintiff admits that he did receive a copy of Defendant's handbook; however, Plaintiff did not recall receiving an updated copy. (Doc. 23-1, p. 18, tpp 60:5-61:20).

6.    Plaintiff admits that he did receive training regarding Defendant's sexual harassment policy.

7.    Admitted.

8.    Admitted.

9.    Admitted. Plaintiff further states that khaki's and a blue collared shirt was appropriate attire for Plaintiff's job function. (Doc. 23-1, p. 22, tpp: 79:13-16); (Doc. 23-3, 26:3-4).

10. Admitted.

11. Denied. Plaintiff specifically stated that he began looking for a new job in 2024, when things got uncomfortable with Ursula Means. (Doc. 23-1, p. 37, tpp. 140:3-12). Plaintiff testified that things became uncomfortable with Ursula Means when she came in because she harassed him all the time. (Doc. 23-1, p. 48, tpp. 182:10-18).

12. Admitted.

13. Admitted.

14. Plaintiff admits that he never received a decrease in pay, was not demoted, nor had his employment terminated; however, Plaintiff alleges that he was subjected to adverse employment actions as a result of Ursula Means's sexual harassment, such as being refused the opportunity to apply for promotions based on his sex. (Doc.23-1, p. 30, tpp. 111:2-15; 112: 11-18; p. 31, tpp. 114: 2-18).

15. Denied. Plaintiff specifically testified that he felt that any attempt to transfer departments would have been rejected. (Doc. 23-1, p. 48, tpp. 184:3-5).

16. Denied as stated. Plaintiff did send Kelli Truitt an email on February 27, 2024 regarding sexual harassment and retaliation from Ursula Means. (Doc. 23-1, p. 40, tpp. 150:4-7). However, this was not the first time Plaintiff reported

Ursula means to a supervisor for harassment. (*See, e.g.* Doc. 23-1, p. 26, tpp. 93:19-96:17).

17. Admitted. Plaintiff also clarified that his email was only contained some of instances of harassment, and did not contain all of them.

18. Admitted.

19. Admitted.

20. Denied as stated. Plaintiff specifically testified that he could only wear scrub pants after Ursula Means instructed him to wear scrub pants instead of khaki pants like the rest of the warehouse. (Doc. 23-1, p. 22, tpp. 78:21-79:16).

21. Plaintiff admits that he did not report Ursula Means to Defendant's Human Resources; however, he did report Ursula Mean to Edward Kirk and Nacy Ling. (Doc. 23-1, p. 26, tpp. 93:19-94:23).

22. Denied. Plaintiff spoke to both Nancy Ling and Edward Kirk. (Doc. 23-1, p. 26, tpp. 93:19-94:23). Plaintiff's conversation with Nancy Ling consisted of Plaintiff complained that no one else had to wear scrub pants and Nancy responded that it was what Ursula wanted. (Doc. 23-1, p. 26, tpp. 94:18-95:7). Plaintiff's conversation with Edward Kirk contained Plaintiff complaining about Ursula Means looking at Plaintiff's crouch while demanding he wear scrub pants and Edward Kirk responding that "she [Ursula] maybe wanted some [sex]." (Doc. 23-1, p. 26, tpp. 95:11-96:17).

23.    Admitted.

24.    Plaintiff admits that he did not report Ursula Means's comment to Human Resources but he did report it to Nancy Ling. (Doc. 23-1, p. 112:11-113:20).

25.    Admitted.

26.    Plaintiff admits that on August 30, 2023, Ursula Means sent him a text message at 1:07 pm asking him to come into her office. (Doc. 23-1, p. 86). After Plaintiff told Ursula he was not in the office today, Ursula told him the reason he called her into his office was she "just wanted to see [Plaintiff's] pretty face." (Doc. 23-1, pp. 86-87).

27.    Denied as stated. At the time of Plaintiff's deposition he could not recall any other text messages that he thought was inappropriate. (Doc. 23-1, p. 24, tpp. 172:19-21).

28.    Admitted.

29.    Denied. Plaintiff testified that that Ursula Mean touched him a couple of times. (Doc. 23-1, p. 23, tpp. 84:13-19).

30.    Denied as stated. Plaintiff specifically testified that Ursula grabbed his should then moved her hand down his chest. (Doc. 23-1, pp. 24, tpp. 88:16-89:3). Plaintiff rebuffed the unwanted touching. (Doc. 23-1, p. 25, tp. 89:4-13).

31.    Denied as stated. Plaintiff testified Ursula would "bump" Plaintiff with her hips on multiple occasion while the two were in the warehouse. (Doc. 23-1,

p. 25, tpp. 89:15-92:21). When Plaintiff rebuffed Ursula's touches, she laughed. (Doc. 23-1, p. 25, tp. 93:2-9).

32. Admitted.

33. Admitted.

34. Denied as stated. Ursula Means made the statement that if it was a real live shooter situation "we [women] wouldn't have anyone to protect us [women]. Nick [the only man] wouldn't protect us. (Doc. 23-1, p. 28, tpp. 120:23-121:22).

35. Admitted.

36. Admitted.

37. Admitted.

38. Admitted that Ursula Means moved Plaintiff out of his office and gave it to Marie Sutton. Plaintiff denies that Nancy Ling was the person who moved the office.

39. Denied.

40. Admitted.

41. Denied. Plaintiff specifically testified that Ursula Means was the individual who told him that she is the reason he no longer had his office, and she was the one who gave it to Marie Sutton. (Doc. 23-1, p. 36, tpp. 136:2-14).

42. Admitted that Plaintiff did not complain to Human Resources, but Plaintiff did complain to the Director of Clinical Engineering, Nancy Ling, and another director named Riley. (Doc. 23-1, p. 37, tpp. 137:9-138:5).

43. Admitted that Ursula told Plaintiff that they were going to hire a female named Ashley that Ursula used to work with.

44. Admitted.

45. Admitted that the Plaintiff stated that Lasser was honest if it benefitted her. Plaintiff went on to explain his statement by saying that he used to help Lasseter with contracts, but if there was an instance where Lasseter could get in trouble she would lie in order to avoid being in trouble. (Doc. 23-1, pp. 29-30, tpp. 107:12-109:13).

46. Admitted.

47. Admitted.

48. Plaintiff admits that the document says what Defendant quotes. Plaintiff denies that was the reason that Ursula Means did not approve his timecard punches. (Doc. 23-1, p. 34, tpp. 125:7-12); (Doc. 23-1, pp. 32-33, tpp. 120:18-121:2).

49. Admitted.

50. Plaintiff admits that Ling testified that the problem was caused by a system error where Plaintiff would punch his time card in another time zone;

however, Plaintiff denies that Ursula Means was not failing to correct his time card on purpose. (Doc. 23-1, pp. 35-36, tpp. 131:19-133:2).

51. Denied. After Plaintiff complained about the time card issue, Ursula called Plaintiff a "snitch" and threatened to have her son and nephew "whoop" [attack] him. (Doc. 23-1, p. 32, tpp. 119:22-120:17).

52. Admitted.

53. Admitted.

54. Plaintiff admits that he did not report the threat to Human Resources, the police, or security; however, Plaintiff did report the threat to Nancy Ling and Edward Kirk. (Doc. 23-1, p.54, tp. 205:2-3).

55. Plaintiff admits that he was not attacked by "Pookie" or "John-John" as threatened by Ursula Means.

56. Admitted.

57. Admitted.

58. Admitted.

59. Admitted.

60. Denied as stated. Plaintiff specifically testified that after he rejected Ursula Means's offer to take him to dinner and home that she got hostile with him. (Doc. 23-1, p. 44, tpp. 165:21-166:6).

61. Admitted.

62. Admitted.

63. Plaintiff admits that Defendant conducted an "investigation" after Barnes's February 27, 2024 Email Complaint.

64. Admitted.

65. Plaintiff admits that Nancy Ling replied as stated in the paragraph; however, Plaintiff denies that any of his statements were false.

66. Admitted.

67. Admitted.

68. Plaintiff admits that Nancy Ling provided additional feedback as stated, but Plaintiff denies the accuracy of Nancy Ling's feedback.

69. Admitted.

70. Admitted.

71. Plaintiff admits that Defendant concluded that his complaint was unsubstantiated after interviewing his harasser (Ursula Means) and a person who he knows to be dishonest in instances where it benefits her (Lasseter).

72. Admitted.

73. Admitted.

## PLAINTIFF'S STATEMENT OF ADDITIONAL MATERIAL FACTS

74.  Prior to Ursula Means becoming his supervisor, Plaintiff had never received any disciplinary actions regarding his attitude or work performance. (Doc. 23-1, p.28, tp. 101:7-11).

75.  Plaintiff was the only employee in the warehouse required to wear scrubs. (Doc. 23-1, p. 22, tp. 18-19).

76.  After reporting Ursula Means's sexual harassment and making him wear scrub pants, Plaintiff went to Human Resources to request a meeting with someone who could address his concerns; however, he was sent away by the secretary of Human Resources. (Doc. 23-1, p. 26, tpp. 93:19-94:7).

77.  After the second incident of Ursula Means touching Plaintiff in a way he believed to be sexual, Plaintiff attempted to go back to Human Resources multiple times, but was sent away each time.  (Doc. 23-1, p.27, tpp. 97:19-98:20).

78.  After Plaintiff's attempts to report Ursula Means, Lasseter told Plaintiff that Ursula Means was trying to "get Plaintiff up out of here" [fired].(Doc. 23-1, p. 29, tpp. 107:14-21).

79.  On or around January 2024, after Plaintiff made additional reports about Ursula Means to Nancy Ling, Plaintiff noticed that Ursula means was not

approving time card punch entries despite requesting her to, and had to report it to Human Resources. (Doc. 23-1, p. 32, tpp. 118:15-119:8).

80. Immediately after meeting with the payroll department, Means confronted Plaintiff, called him a "snitch", and threatened to have her son and nephew attack Plaintiff. (Doc. 23-1, p. 32, tpp. 119:22-120:17).

81. This comment made Barnes fear for his safety. (Doc. 23-1, p. 53 tpp. 204:16-21).

82. Plaintiff testified that he attempted to go to Human Resources on multiple occasions. (Doc. 23-1, p. 34, tp. 128:16).

83. After numerous reports about Ursula Means's sexual harassment and retaliation against him for reporting her, Plaintiff felt as if nothing would stop Ursula's conduct and that caused great mental distress. (Doc. 23-1, p. 47, tpp. 180:3-18); (Doc. 23-1, p. 48, tpp. 181:13-182:5)

84. During Nancy Ling's Deposition, she testified that she could not recall all of her conversations with Plaintiff and that he made "sidebar" comments regarding Ursula Means bullying him was not worth investigating. (Doc. 23-3, p. 20, tpp. 69:3-70:5); (Doc. 23-1, pp. 20-21, tpp. 72:1-73:1); (Doc. 23-3, p. 21, tp. 76:12-16).

85.   Plaintiff testified that he continues to suffer mental anguish and cannot no longer participate in activities he used to enjoy due to the stress and triggers of Ursula's harassment. (Doc. 23-1, pp. 48, tpp. 184:15-185:1, 185:17-186:7).

86.   Defendant's Corporate Representative testified that instances where a supervisor make an unwelcome comment about an employees "pretty face", and any instance where a supervisor would threaten to have an employee attacked would constitute a violation of Defendant's Policies and Procedures. (Exhibit A, 53:5-55:15; 57:13-18).

87.   Despite this testimony, Ursula Means remains employed by Defendant because Defendant did not substantiate Plaintiff's claims for harassment. (Exhibit A, 75:9-12; 76:13-18).

## SUMMARY JUDGMENT STANDARD

Summary judgement is appropriate only if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(a). Facts are considered "material" if they could affect the outcome of the suit. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The Court must "view the facts in the light most favorable to the non-moving party…" *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). The Court must also draw "all justifiable inferences in [the non-moving party's] favor." *U.S. v. Four Parcels of Real Prop.*, 941 F.2d 1428, 1437 (11th Cir. 1991).

# LEGAL ANALYSIS

## I.   DEFENDANT IS NOT ENTITLED TO SUMMARY JUDGMENT ON PLAINTIFF'S SEXUAL HARRASSMENT CLAIM

In the Eleventh Circuit, a plaintiff must show "(1) that he or she belongs to a protected group; (2) that the employee has been subjected to unwelcome sexual harassment, such as sexual advances, requests for sexual favors, and other conduct of a sexual nature; (3) that the harassment must have been based on the sex of the employee; (4) that the harassment was sufficiently severe or pervasive to alter the terms and conditions of employment and create a discriminatorily abusive working environment; and (5) a basis for holding the employer liable." *Mendoza v. Borden, Inc.*, 195 F.3d 1238, 1245 (11th Cir. 1999). Defendant attempts to argue that Plaintiff has not met his burden for the third and fourth element in this action. (Doc. 22, pp. 19-20). However, especially in a light most favorable to Plaintiff, the evidence before this Court shows that Defendant subjected Plaintiff to sexual harassment and a hostile work environment.

### A.   URSULA'S HARASSMENT WAS BASED ON PLAINTIFF'S SEX

The evidence in this action clearly shows that the Harassment was based on the sex of Plaintiff's sex. Plaintiff has clearly provided both testimony and evidence that Ursula's harassment was either based directly on Plaintiff's sex, or her sexual attraction to Plaintiff. Consequently, Plaintiff has produced sufficient evidence to

prove that the Ursula's harassment was based on Plaintiff' sex, and Defendant's argument fails as a matter of law.

**B.    PLAINTIFF HAS PRODUCED SUFFICIENT EVIDENCE THAT THE HARASSMENT OF SEVERE AND PERVASIVE.**

In the Eleventh Circuit, a hostile work environment claim is actionable if it is suffused with "'Intimidation, ridicule, and insult…to alter the conditions of the victim's employment'" *Copeland v. Georgia Dep't of Corr.*, 97 F.4th 766, 775 (11th Cir. 2024) (citing *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21, 114 S.Ct. 367, 126 L.Ed.2d 295 (1993)). Stated another way, "[t]o be actionable under Title VII, a hostile work environment must be both objectively and subjectively offensive, one that a reasonable person would find hostile and abusive, and one that the victim in fact did perceive to be so." *Hulsey v. Pride Restaurants, LLC*, 367 F.3d 1238, 1247 (11th Cir. 2004) (citation and quotations omitted).

In determining whether a work environment meets the objective test, "courts typically look to: (1) the frequency of the conduct; (2) the severity of the conduct; (3) whether the conduct was physically threatening and humiliating or just a mere utterance; and (4) whether the conduct unreasonably interferes with the employee's work performance. *Id.* at 1247-48. The Eleventh Circuit tasked courts to "determine under the totality of the circumstances whether the harassing conduct ... alter[ed] the terms or conditions of the plaintiff's employment." *Copeland*, 97 F.4th at 775–76 (quoting *Mendoza* 195 F.3d at 1246).

Here, Plaintiff has produced evidence and testimony showing that the harassment he endured satisfies each of the factors of the objective test. Plaintiff testified that since February of 2023, the date Ursula became Plaintiff's supervisor, he was subjected to constant sexual harassment that included physical contact, humiliation, changes in work conditions, and threats of violence. (See e.g. Doc. 23-1, p. 22, tpp. 78:21-79:16); (Doc. 23-1, pp. 86-87); (Doc. 23-1, p. 34, tpp. 125:7-12); (Doc. 23-1, pp. 32-33, tpp. 120:18-121:2). As a result of Ursula's harassment, Plaintiff endured significant stresses both inside and outside of the workplace. (Doc. 23-1, p. 47, tpp. 180:3-18); (Doc. 23-1, p. 48, tpp. 181:13-182:5); (Doc. 23-1, pp. 48, tpp. 184:15-185:1, 185:17-186:7).

In addition to affecting Plaintiff's terms and conditions to the job that he had at the time of his employment, Ursula's harassment also negatively affected Plaintiff's ability for to apply for promotions within Defendant for other positions as well, because Ursula did not think that Plaintiff should work around other women because other women "liked" plaintiff. (Doc. 23-1, p. 30, tp. 111:2-15).

Defendant is correct that Title VII is not "a general civility code". (Doc. 22, p. 17). However, the Eleventh Circuit has ruled that "[h]arassment is also more sever when it involves the participation of supervisors rather than soley peers or subordinates." *Copeland*, 97 F.4th at 777. Further, the Eleventh Circuit has "long recognized that harassment is more severe when it occurs 'despite the employee's

objections.'" *Id.* (citing *Miller v. Kenworth of Dothan, Inc.,* 277 F.3d 1269, 1276 (11th Cir. 2002)). Plaintiff provided testimony that he rebuffed Ursula's advances on numerous occasions. (Doc. 23-1, p. 25, tp. 89:4-13); (Doc. 23-1, p. 25, tp. 93:2-9); (Doc. 23-1, p. 44, tpp. 165:21-166:6). Plaintiff also provided testimony that Ursula's harassment also included threats that she could win in a fight against him, and that she was going to get third-parties to attack him. (Doc 23-1, p. 28, tpp. 102:23-104:2);(Doc. 23-1, p. 32, tpp. 119:22-120:17); *See also, Copeland v. Ga. Dep't of Corr.*, 97 F.4th 766 at 777-78; *Gray v. Koch Foods, Inc.*, 580 F. Supp. 3d 1087 at 1110 (M.D. Ala. 2022)). Furthermore, Defendant's corporate representative agreed that Ursula's harassment constituted a violation of their harassment policy on at least one occasion. (Exhibit A, 53:5-55:15 (Ursula's text constituted harassment); (Exhibit A, 57:13-18 (Ursula's threat to have her son and nephew attack Plaintiff was a breach of Defendant policy). Consequently, Plaintiff has produced sufficient evidence that Ursula's harassment constitutes severe and pervasive.

### C.    PLAINTIFF HAS PRODUCED SUFFICIENT EVIDENCE THAT DEFENDANT IS LIABLE FOR URSULA'S SEXUAL HARASSMENT.

Defendant's Motion for Summary Judgment mischaracterizes Plaintiff's testimony and evidence before the Court regarding Plaintiff's attempts to end Ursula's harassment by notifying his superiors. Plaintiff clearly testified that he spoke to Ling, Human Resources, and other Supervisors employed by Defendant on numerous occasions regarding Ursula's treatment. It was not until Plaintiff

complained and terminated his employment as a last resort to escape Ursula that

Defendant "recognized" Plaintiff's complaints of harassment and "investigated" his

claims.[1] (Doc. 23-3, p. 10, tp. 30:14). Consequently, Plaintiff has produced sufficient

evidence that Defendant was aware of Ursula's harassing conduct, failed to take any

actions to prevent further harassment, and is liable for the harassment Plaintiff was

subjected to.

## II.    PLAINTIFF HAS PRESENTED SUBSTANTIAL EVIDENCE THAT DEFENDANT RETALIATED AGAINST HIM.

Under Title VII it is unlawful for an employer "to fail or refuse to hire or to

discharge any individual, or otherwise to discriminate against any individual with

respect to his compensation, terms, conditions, or privileges of employment, because

of such individual's race, color, religion, sex, or national origin." §2000e. To

establish a retaliation claim for violation of Title VI, Plaintiff must make a *prima*

*facie* showing that (1) he engaged in a protected activity protected under Title VII,

(2) he suffered an adverse employment action, and (3) there was a causal connection

between the protected activity and the adverse employment action. *Copeland*, 97

F.4th at 782 (citing *Crawford v. Carroll*, 529 F.3d 961, 970 (11th Cir. 2008)). In

other words, "a plaintiff must show that a reasonable employee would have found

---

[1] Although Defendant claims it investigated the claims, the investigation entailed nothing more asking Ursula and one other co-employee regarding the harassment. (Doc. 23-3, p. 10, tpp. 30:15-31:13). Despite Defendant admitting that Ursula violated the sexual harassment policy, she remains employed with Defendant. (Exhibit A, 75:9-12; 76:13-18).

the challenged action materially adverse, "which in this context means it well might have dissuaded a reasonable worker from making or supporting a charge of discrimination." *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 68, 126 S. Ct. 2405, 2415, 165 L. Ed. 2d 345 (2006) (citation omitted).

Recently, the Supreme Court ruled that although a plaintiff must show "some harm", Title VII does not establish a significance test that a plaintiff must prove. *See, Muldrow v. City of St. Louis, Missouri*, 601 U.S. 346, 350, 144 S. Ct. 967, 972, 218 L. Ed. 2d 322 (2024) (The Court overturned the Eighth Circuit for requiring a plaintiff to show proof that her forced transfer produced a significant employment disadvantage).

As stated above, Plaintiff engaged in the protected activity of complaining about Ursula's sexual harassment to Defendant on numerous occasions. (See, Section I(C), *supra*). Plaintiff has produced testimony stating that he complained to Nancy Ling regarding Ursula requiring him to wear scrub pants so she could sexually harass him as early as February 2023. (Doc 23-1, p. 23, tp. 83:13-22). Following this initial report, Plaintiff would go on to report numerous instances to Nancy Ling or other supervisors for Defendant that he believed that Ursula Means was discriminating against him based on his sex. (Doc. 23-1, p. 28, tpp. 120:23-121:22); (Doc. 23-1, p. 112:11-113:20); (Doc. 23-1, p. 37, tpp. 137:9-138:5). Furthermore, Plaintiff was not able to apply for promotions within Defendant for

other positions because Ursula did not believe that Plaintiff, a man, should work with females because they would like him. (Doc.23-1, p. 30, tpp. 111:2-15; 112: 11-18; p. 31, tpp. 114: 2-18). After Plaintiff reported Ursula numerous times, Plaintiff's co-worker warned him that Ursula was trying to get Plaintiff fired, or was going to try to make him quit. (Doc. 23-1, p. 29, tp. 106:12-15).

Furthermore, in 2024, Ursula attempted to get Plaintiff terminated by not authorizing his punch cards, and it was not until Plaintiff complained to Human Resources that Ursula approved Plaintiff's timecard entries. (Doc. 23-1, p. 32, tpp. 118:15-119:8). After Plaintiff complained to Human Resources and had the time card corrected, Ursula threatened Plaintiff with bodily injury by having Plaintiff assaulted by her son and nephew. (Doc. 23-1, p. 32, tpp. 119:22-120:17). Leaving Plaintiff in fear for his bodily safety. (Doc. 23-1, p. 53 tpp. 204:16-21).

In February 2024, believing that there was no other option to prevent future harassment, retaliation, and threat of bodily harm, Plaintiff was left with no choice but to resign from his employment with Defendant to stop Ursula's discriminatory and retaliatory conduct. Consequently, Plaintiff has made his *prima facie* case for retaliation by providing significant evidence that he engaged in a protected activity by reporting Ursula Means for sexual harassment, that he suffered adverse employment actions by not being allowed to apply for promotions, and being subjected to physical threats of violence, and that there is a causal connection

between his report and the adverse action which ultimately culminated in his constructive discharge from his employment with Defendant.

## CONCLUSION

For the forgoing reasons, Defendant's Motion for Summary Judgment fails as a matter of law, and Defendant is not entitled to summary judgment on any claims in this case.

/s/ Jon-Kaden Mullen
D. Jeremy Schatz
Jon-Kaden Mullen (MUL040)
*Attorneys for Plaintiff*

**OF COUNSEL:**
Virtus Law Group
2017 Morris Avenue, Ste 100
Birmingham, AL 35203
js@vlgal.com
jm@vlgal.com

## <u>CERTIFICATE OF SERVICE</u>

I certify that on July 8, 2025, a copy of the preceding has been served upon

all counsel of record via the Electronic Mail system and/or U.S. Mail.

> Warren B. Lighfoot, Jr.
> Brock Phillips
> Maynard Nexsen, P.C.
> 1901 Sixth Avenue North
> 1700 Regions/Harbert Plaza
> Birmingham, AL 35203
> wlightfoot@maynardsexsen.com
> bphillips@maynardsexsen.com
> Attorney for Defendant

> <u>/s/ Jon-Kaden Mullen</u>
> OF COUNSEL