IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
EASTERN DIVISION

| | | |
|---|---|---|
| NICHOLAS BARNES, an individual, | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | CIVIL ACTION NO: |
| EAST ALABAMA MEDICAL CENTER FOUNDATION, d/b/a EAST ALABAMA MEDICAL CENTER, a nonprofit corporation, | ) ) ) ) ) ) ) ) | 3:24-cv-00512 |
| Defendant. | ) | |

## PLAINTIFF'S OBJECTION TO THE REPORT AND RECOMMENDATION OF MAGISTRATE JUDGE

Nicholas Barnes (hereinafter "Barnes" or "Plaintiff"), pursuant to Rule 72(b) of the Federal Rules of Civil Procedure, 28 U.S.C. § 636(b)(1), and this Court's Order (Doc. 28), submits the following Objections to the September 2, 2025 Recommendation of the Magistrate Judge (hereinafter "Report"). (Doc. 28). In support of his objections, Barnes states as follows:

## I.   INTRODUCTION

On September 2, 2025, Magistrate Judge Stephen M. Doyle issued a report recommending that the Court grant East Alabama Medical Center Foundation d/b/a

East Alabama Medical Center's (hereinafter "Defendant") Motion for Summary Judgment and dismiss Barnes's case. (Doc. 28). Specifically, the Magistrate found that the harassment Barnes's supervisor, Ursula Means ("Means"), was not severe and pervasive enough to create a sexually hostile work environment (Doc. 28, p.9), and found that Barnes did not show Defendant "took any adverse action against him or that any adverse action taken was causally related to his protected activity." (Doc. 28, p. 14). As discussed below, Barnes objects to the Magistrate's recommendation that Defendant's Motion for Summary Judgment be granted, and this action be dismissed.

## II.    <u>STANDARD OF REVIEW</u>

Under 28 U.S.C.§ 636(b)(1), if a party files a timely written objection to the Magistrates recommendation, the District Court "shall make a *de novo* determination of those portions of the report or specific proposed findings or recommendations to which objection is made." 28 U.S.C. § 636(b)(1). The District Court must review the record and independently consider the factual issues based on the record. *Jeffrey S. ex rel. Ernest S. v. State Bd. of Educ.*, 896 F.2d 507, 513 (11th Cir. 1990); *see also United States v. Gopie*, 347 F. App'x 495, 499 n.1 (11th Cir. 2009). Furter, legal conclusions are subject to *de novo* review even if no party specifically objects. *United States v. Keel*, 164 Fed. Appx. 958, 961 (11th Cir. 2006); *United States v. Warren*, 687 F.2d 347, 347 (11th Cir. 1982). the district court "may accept, reject,

or modify the recommended disposition; receive further evidence; or resubmit the matter to the magistrate judge with instructions." Fed. R. Civ. P. 72(b)(3); *See* also, *Brent Lightsey, et al., v. Alabama Department Of Human Resources*, No. 2:25-CV-603-RAH, 2025 WL 2623450, at *1 (M.D. Ala. Sept. 11, 2025).

## III.  SPECIFIC OBJECTIONS

1.  Barnes objects to the Magistrate Judge's legal conclusion that Barnes was not subjected to a sexually hostile work environment.

2.  Barnes objects to the Magistrate Judge's omission to a factual finding that Barnes reported Means's harassment on multiple occasions to Defendant's supervisors.

3.  Barnes objects to the Magistrate Judge's factual finding that he was subjected to only eleven instance of harassment from Means.

4.  Barnes objects to the Magistrate's legal conclusion that Means harassment was infrequent.

5.  Barnes objects to the Magistrate's factual findings and legal conclusion that Means's harassment was not severe.

6.  Barnes objects to the Magistrate Judge's factual finding that Barnes did "not consider the [Means's] comments physically threatening at the time they were made.

7.    Barnes objects to the Magistrate Judge's legal conclusion that the instances Means "couple of touching incidents" and "few comments" were not "objectively serious and appear to be mere banter and horseplay instead of harassment."

8.    Barnes objects to the Magistrate Judge's factual finding and legal conclusion that Means's comments were not "sufficiently humiliating to constitute a sexually hostile work environment."

9.    Barnes objects to the Magistrate Judge's factual findings and legal conclusion that Means's harassment interfered with Barnes's work performance.

10.    Barnes objects to the Magistrate Judge's omission to the fact that Defendant's testimony admits that Means's conduct constituted as sexual harassment according to its policies and procedures.

11.    Barnes objects to the Magistrate's legal conclusion that the harassment, viewed in a light most favorable to Barnes, was not sufficiently severe and pervasive enough to create a sexually hostile work environment.

12.    Barnes objects to the Magistrate's finding of fact that he did not suffer an adverse action causally related to his report of Means's discrimination.

13.    Barnes objects to the Magistrates Judge's legal conclusion that Barnes was not retaliated against by Defendant.

14.     Barnes objects to the Magistrate Judge's legal conclusion that Defendant did not constructively discharge Barnes.

15.     Barnes objects to the Magistrate Judge's factual finding that Barnes's willingness to work out a two-week notice that Means's harassment did not interfere with Barne's willingness to return to work and complete his responsibilities.

## IV.  **ARGUMENT**

### A.  **THE MAGISTRATE ERRED IN RECOMMENDING THE DISMISSAL OF PLAINTIFF'S SEXUAL HARASSMENT CLAIM.**

#### 1.   The Magistrate Erred In Omit Barnes's Multiple Reports to Defendant

The Report ignores critical facts asserted by the Barnes that he made numerous reports to Defendant through its supervisors regarding Means's conduct. (*Compare*, Doc. 28, p. 3 and p.7; *with* Doc. 25, ¶¶ 16, 17, 21, 22, 24, 42, 54, 79, 84). Barnes is entitled to all justifiable inferences in his favor. *See, U.S. v. Four Parcels of Real Prop.*, 941 F.2d 1428, 1437 (11th Cir. 1991). Furthermore, as the nonmoving party, all of the factual allegations made by Barnes must be accepted as true when supported by evidence on the record. *Sconiers v. Lockhart,* 946 F.3d 1256, 1263 (11th Cir. 2020). Consequently, the Report was erroneous in omitting Barnes's multiple reports to Defendant as a fact.

5

2.    The Magistrate Erred In Finding The Harassment Infrequent.

The Report makes a factual finding that Barnes had eleven incidents and comments during the year that Means supervised him. (Doc. 28, p. 9). The Eleventh Circuit has warned District Courts about discarding a plaintiff's deposition testimony at the summary judgment stage regarding frequency. *Copeland v. Georgia Dep't of Corr.,* 97 F.4th 766, 776 (11th Cir. 2024). In this case, Barnes testified that Means subjected him to harassment "all the time" and "There was never a time when she stopped. She would always be at me." (Doc. 23-1, p. 48, tp. 182:9-18). Furthermore. Barnes's emails, and testimony regarding the complaints, were instances that Barnes felt were only some instances that Means harassed him. (Doc. 23-1, p. 11, tpp. 35:7-36:12). Consequently, the Report erred in only attributing Eleven instances where Means subjected Barnes to harassment, and the District Court should view Means's harassment as frequent for the purposes of Summary Judgment.

3.    The Magistrate Erred In His Legal Conclusion Harassment Was Infrequent

The Report made the legal conclusion that Means's harassment over her approximate year of being Barnes's supervisor was not sufficient to make the harassment frequent. (Doc. 28, p. 9). In the Eleventh Circuit there is no "magic number" to qualify harassment as frequent. *Copeland v. Georgia Dep't of Corr.,* 97 F.4th 766, 776 (11th Cir. 2024). The report erred in only considering the incidents

identified in his complaint and questioned about during his deposition. (Doc. 28, p. 9). As stated above, while these instance may have been the most memorable at the time Barnes complained, it was not an exhaustive list. *See*, Section IV(A)(2), *supra.*. Despite, not "magic number" existing, a jury, crediting Barnes's testimony, could find that Means surpassed that number for frequent harassment. *Copeland v. Georgia Dep't of Corr.,* 97 F.4th 766, 776 (11th Cir. 2024). Consequently, the harassment Barnes's endured should be found frequent for summary judgment purposes.

### 4.    The Magistrate Erred In His Legal Conclusion That The Harassment Was Not Severe.

The Magistrate's Report makes the legal conclusion that the harassment Barnes was subjected to by Means was not severe because none of the comments appeared to be "objectively serious", but "appear to be mere banter and horseplay instead of sexual harassment." (Doc. 28, p. 11). Here, Barnes has not only presented evidence that Means's harassment was not "banter and horseplay" but actual threats of harm, but also introduced evidence that, under Eleventh Circuit precedent, actually warrants a presumption that Means's harassment is more severe and humiliating than would otherwise be considered.

When considering harassment's severity, the Eleventh Circuit looks to determine whether a plaintiff has presented evidence "sufficient to enable a reasonable jury to conclude that the harassment was severe." *Copeland v. Georgia*

*Dep't of Corr.*, 97 F.4th 766, 777 (11th Cir. 2024). The Supreme Court has defined severe as a workplace permeated with discriminatory intimidation, ridicule and insult, "not where there is the "mere utterance of an ... epithet." *Miller v. Kenworth of Dothan, Inc.*, 277 F.3d 1269, 1276–77 (11th Cir. 2002) (quoting *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21, 114 S. Ct. 367, 370, 126 L. Ed. 2d 295 (1993)).

Here the record supports, through Barnes's testimony, that Means conduct was constant during her tenure as his supervisor. *See*, Section IV(A)(1), *supra.* Whether it was unsolicited touching, comments about Barnes's masculinity, threats of violence, unsolicited texts commanding him to come to her office so that she could see "his pretty face", or telling him that he will not be allowed to receive a promotion because of her belief men and women should not work together, the record shows that Means's harassment was not "a mere utterance", but infected Barnes's workplace with intimidation, ridicule, and insult. *See*, Section IV(A)(5)-(6), *infra.*

In the Eleventh Circuit, "harassment is more severe when it occurs despite employee's objections" *Id.* (quoting *Miller v. Kenworth of Dothan, Inc.,* 277 F.3d 1269, 1276 (11th Cir. 2002)). The record is clear that Barnes reported Means's harassment on multiple occasions. *See e.g.* (Doc. 23-1, p. 48, tp. 184:3-5); (Doc. 23-1, p. 26, tpp. 93:19-96:17). Thus, Barnes's harassment should be viewed even more

severe than it otherwise would because it continued after numerous reports. (Doc. 23-1, p. 31, tp. 114:1-5) (Barnes testified Nancy Ling knew about the harassment.)

Further, the Supreme Court and the Eleventh Circuit hold that "Harassment is also more severe when it involves the participation of supervisors rather than solely peers or subordinates. *Copeland v. Georgia Dep't of Corr.,* 97 F.4th 766, 777 (11th Cir. 2024) (citing *Faragher v. City of Boca Raton*, 524 U.S. 775, 803, 118 S.Ct. 2275, 141 L.Ed.2d 662 (1998)). Conduct by a supervisor impacts the work environment more than co-equals and is more likely to be physically threatening and severe. *Copeland*, 97 F. 4th at 778. Here, the record is clear that Means was Barnes's supervisor. Consequently, the record supports that the Magistrate erred in its conclusion that Barnes was subjected to severe harassment by his supervisor, Means, on numerous occasions despite his complaints to Means and Defendant.

5.    The Magistrate Erred In Making The Factual Finding Barnes Did Not Find Means's Threats Threatening.

The Report found that Barnes did not find Means's comment that she was going to physically attack him, or her comment she was going to facilitate her son and nephew to physically attack him as physically threatening at the time the threat was made because he did not contact the Defendant or the police at the time the threat was made. (Doc. 28, p. 12). In one instance, Means commented that Barnes would be no help in an active shooter because she could "whoop" Barnes. (Doc. 23-1, p. 29, tp. 105:2-4). In another instance Means was telling Barnes that she was

9

going to recruit her nephew and son to assault him. (Doc. 23-1, p. 32, tpp. 199:23 – 120:17). Barnes's testimony directly contradicts the Report's factual finding, and specifically states that he was in fear for his physical safety, and reported that fear to Defendant. (Doc. 23-1, p. 53 tp. 204:13-21); (Doc. 23-1, p. 58). Barnes testified that he suffered severe anxiety as a result of Means threats. (Doc. 23-1, p. 49, tpp. 185:17-186:7). Consequently, the Report erred in its factual finding that Barnes did not find Means's threats of physical violence to be physically threatening.

### 6. The Magistrate Erred In His Factual Finding That Barnes Was Not Humiliated By Means Harassment.

The Report, outside of the two instances where Means threatened Barnes with physical violence, does not offer any additional instances in its analysis of the humiliating nature of Means's harassment. However, the record clearly shows that he was left feeling humiliated by Means's harassment. In Barnes's deposition, he stated that, prior to Means becoming his supervisor, he loved his job. (Doc. 23-1, p. 47, tp. 178:9-18). However, after Means became his supervisor, the harassment became so unbearable that Barnes felt like he could no longer work for Defendant. (Doc. 23-1, p. 48, tpp. 181:13-182:5). Barnes testified that mentally Means's harassment "damaged" him. (Doc. 23-1, p. 47, tp. 179:18-19). Furthermore, Barnes testified that the humiliation and "damage" from Means extended into his personal life and altered his ability to enjoy things he used to enjoy because of the humiliation

he faced. (Doc. 23-1, p. 49, tpp. 185:17-186:7). Consequently, the Report erred in its factual finding that Barnes was not humiliated by Means's harassment.

> 7.    The Magistrate Erred In His Legal Conclusion That Means's Harassment Was Not Physically Threatening Or Humiliating.

The Magistrate made the conclusion that Means's harassment was not physically threatening, nor where they sufficiently humiliating to constitute a hostile work environment. (Doc. 28, p. 12). When considering whether harassment is physically threatening or humiliating for summary judgment purposes, "the district court may not take sides in a 'swearing match' between the parties, 'which is the stuff of which jury trials are made.'". *Copeland v. Georgia Dep't of Corr.,* 97 F.4th 766, 779 (11th Cir. 2024) (quoting *Feliciano v. City of Miami Beach*, 707 F.3d 1244, 1253 (11th Cir. 2013)). In this case, Barnes clearly testified that he felt both humiliated and physically threatened by Means and her harassment. *See*, Section IV(A)(5)-(6). Furthermore, Barnes was often harassed in front of other co-employees – including other supervisors – which left Barnes more humiliated than he would have otherwise. *See*, *Copeland*, 97 F.4th at 779 ("harassment that occurs in the presence of coworkers is especially humiliating."). Consequently, the Magistrate erred in its conclusion that that nature of Means's harassment was not physically threatening nor humiliating.

8.    The Magistrate Erred In His Legal Conclusion That Means's Harassment Did Not Interfere With Barnes's Job Performance.

The Magistrate finds and concludes that because Barnes was not subject to discipline, have to leave early or take time off, or show any negative effect on his job performance. (Doc. 28, p. 13). However, Barnes's testimony and evidence clearly shows that Barnes's harassment negatively affected his employment. As already discussed, Means's harassment was so severe, physically threatening, and humiliating that it was the sole reason Barnes felt forced to resign from his employment with Defendant. *See*, Section IV(A)(5)-(7). Furthermore, the record supports that Barnes was negatively impacted by restricting him from seeking promotion. (Doc. 23-1, p. 30, tp. 111:2-15, p. 48, tp. 184:3-5), changed his uniform from the rest of his co-employees (Doc. 23-1, p. 22, tpp. 78:21-79:16), nearly resulted in his termination because Means would not approve his timecard punches. (Doc. 23-1, p. 32, tpp. 118:15-119:8), and left Barnes in a mentally damaging hostile work environment until his eventual resignation. (Doc. 25, ¶ 83). Consequently, the Magistrate erred in its factual findings and legal conclusion that Barnes's job performance was negatively impacted.

9.    The Magistrate Judge Erred In Omitting That Defendant's Corporate Representative Affirmed That Means's Conduct Constituted As Sexual Harassment By Its Own Policy.

The Magistrate's Report did not mention Defendant's Corporate Representative confirming that Means's comment regarding Barnes's "pretty face"

constituted sexual harassment by its own policies as stated in Barnes's response brief in opposition for Summary Judgment. (*See,* Doc. 28); (*See also*, Doc. 25, ¶ 86).[1]

> ### 10.    The Magistrate Erred In Its Legal Conclusion That Means's Conduct Was Not Sufficiently Severe and Pervasive To Establish A Hostile Work Environment Based On Sexual Harassment.

The Magistrate concluded that Defendant's Motion for Summary Judge should be grant, and Barnes's hostile work environment claims should be dismissed because Means's harassment was not sufficiently severe or pervasive enough to give rise to a hostile work environment based on sexual harassment. (Doc. 28, p. 13).[2] The severe and pervasive element of a hostile work environment has two sub requirements: a subjective and objective test. *Bryant v. Jones*, 575 F.3d 1281, 1297 (11th Cir. 2009). Here, the Magistrate's report makes the conclusion that Barnes did not satisfy that objective sub-requirement.[3] (Doc. 28). As stated by the Magistrate, the objective sub-requirement contains four factors for consideration. (Doc. 28, p. 8). However, the factors are neither elements nor requirements for the objective sub-requirements and are instead factors to guide the courts. *Copeland v. Georgia Dep't of Corr.*, 97 F.4th 766, 775 (11th Cir. 2024). Ultimately, the objective sub-requirement is to determine whether "a reasonable jury could find the harassment

---

[1] Plaintiff understands that violation of Defendant's anti-harassment does not necessitate a violation of Title VII; however, Plaintiff believes that this fact goes to the veracity of his claims that he was sexually harassed by Means.

[2] The Magistrate's Report did not make any finding or conclusion that Barnes's claim failed to meet any other element of a Hostile Work Environment.

[3] To the extent that the Magistrate's report did conclude that Barnes did not meet the requirements of the subjective test, Plaintiff asserts that this objection includes objecting to said finding, and resubmits the arguments already presented supporting that position. *See*, Section IV(A)(5)-(6).

objectively hostile." *Fernandez v. Trees, Inc.*, 961 F.3d 1148, 1153 (11th Cir. 2020); *See also, Copeland v. Georgia Dep't of Corr.*, 97 F.4th 766, 776 (11th Cir. 2024) (ruling the district court erred when it decided that he failed to present evidence from which a reasonable jury could conclude that the harassment plaintiff faced was sufficiently severe or pervasive to meet the objective sub-requirement).

In this case, Barnes's brief and the record reflect Barnes was (1) frequently subjected to Means's harassment (*See*, Section IV(A)(1)-(3), *supra*); (2) that Means's harassment was severe and pervasive (*See*, Section IV(A)(4)-(6), *supra*); (3) that Means's harassment was both physically threating and humiliating to Barnes (*See*, Section IV(A)(5)-(7)); and, (4) that Means's harassment unreasonably interfered with Barnes's job performance (*See*, Section IV(A)(8)). Thus, based on the Barnes's brief and the record, Barnes has presented sufficient evidence for a reasonable jury to find that Means's harassment was severe and pervasive.[4] Consequently, the Magistrate's erred in its legal conclusion and recommendation that Barnes did not provide sufficient evidence for a reasonable jury to find that Means's harassment was sufficiently severe and pervasive to meet this test.

---

[4] In addition to his reasoning above, Plaintiff injects that the objective sub-requirement and focus on the four factors has inadvertently led to the judiciary making findings of fact that would otherwise be left to a jury. (*See*, Doc. 28, p. 11) ("none of which are objectively serious and **appear** to be mere banter and horseplay instead of harassment."); *See also, Copeland v. Georgia Dep't of Corr.*, 97 F.4th 766, 776 (11th Cir. 2024) (stating that the Eleventh Circuit has had to warn district courts of discounting and rejecting plaintiff testimony in the summary judgment stage.); *Fernandez v. Trees, Inc.*, 961 F.3d 1148, 1154-56 (11th Cir. 2020) (overturning a district court decision ruling a plaintiff produced sufficient evidence for a jury); *Smelter v. S. Home Care Servs. Inc.*, 904 F.3d 1276, 1287 (11th Cir. 2018) (same).

14

**B.    THE MAGISTRATE ERRED IN ITS LEGAL CONCLUSION THAT BARNES CLAIM FOR RETALIATION SHOULD BE DISMISSED.**

> 1.    Barnes Produced Sufficient Evidence Of An Adverse Action Taken Against Him By Defendant and Means.

The Magistrate erred in its conclusion that Barnes did not establish that he suffered an adverse employment action because Barnes presented sufficient evidence that Defendant and Means took action or failed to take action resulting in a reasonable worker from making or supporting a charge of discrimination. To establish a prima facie case of retaliation Barnes must show that "(1) [he] engaged in an activity protected under Title VII; (2) [he] suffered an adverse employment action; and (3) there was a causal connection between the protected activity and the adverse employment action." *Copeland v. Georgia Dep't of Corr.*, 97 F.4th 766, 776 (11th Cir. 2024)( quoting *Crawford v. Carroll*, 529 F.3d 961, 970 (11th Cir. 2008)). An "adverse action" is an action that "well might have dissuaded a reasonable worker from making or supporting a charge of discrimination." *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 68, 126 S.Ct. 2405, 165 L.Ed.2d 345 (2006); *See also, Copeland*, 97 F.4th at 782. Recently, the Supreme Court ruled that although a plaintiff must show "some harm". Title VII does not establish a significance test burden on the plaintiff. *Muldrow v. City of St. Louis, Missouri*, 601 U.S. 346, 350, 144 S. Ct. 967, 972, 218 L. Ed. 2d 322 (2024). Here, Barnes submitted sufficient

evidence that Means and Defendant engaged in conduct that would dissuade a reasonable person from making or supporting a charge of discrimination.

As stated previously, Barnes has made numerous reports of discrimination against Means for sexual harassment. *See*, Section IV(A). Following Barnes's reports, Barnes was warned by a co-employee that Means was trying to get Barnes fired, or make him quit. (Doc. 25, p. 20; Doc. 23-1, p. 29, tp. 106:12-15). In addition to evidence showing Means continued her harassing behavior, Barnes identified two specific instances where Means took action to retaliate against Barnes for his sexual harassment complaints – resisting and refusing to allow Barnes to apply for promotions within Defendant, and purposefully not approving Barnes's timecard punches in an attempt to have Barnes terminated.

At some point after Plaintiff reported Means, a new position for Defendant opened that Plaintiff was interested in. (Doc. 23-1, p. 31, tp. 116:3-19). Barnes asked Means if the position was a real position; however, Means instructed Barnes not to apply for the position. (Doc. 23-1, p. 30, tp. 110:2-12). Barnes reported Means's direction to his Director, Nacy, who ratified Means's direction by telling him to not apply, but told him they would make a position specifically for Barnes soon. (Doc. 23-1, p. 31, tpp. 113:16-114:18). Barnes , under the belief that you cannot apply for a promotion without the approval of your supervisor was not able to apply for the promotion. (Doc. 23-1, p. 31, tpp. 115:21-116:2). Accordingly, Defendant, through

Means direction, and Nacy's ratification, took action against Barnes as a result of his previous reports in a way that would dissuade a reasonable person from filing or supporting a charge of discrimination.

In addition to preventing Barnes from applying for a promotion, Barnes also became aware that Means was not approving his timecard punches, thus resulting in Barnes accumulating "points" for missed punches that, after accumulating too many points, would result in Barnes's automatic termination of his employment. (Doc. 23-1, p. 32, tpp. 118:15-119:8). Barnes received a call from Defendant notifying him that he was half a point away from termination because his punch card times had not been approved by Means. (Doc. 23-1, p. 32, tpp. 118:15-12; pp.32-33, tpp. 120:18-121:2). The record supports that Barnes was specifically targeted by Means in an email that Means received from Defendant regarding his timecard punches. (Doc 23-1, p. 195).[5] Although Barnes was able to report and ultimately thwart Means attempt to get him fired, Means, by jeopardizing Barnes's employment through her refusal to approve his punches, acted in a way that would dissuade a reasonable person from filing or supporting a charge of discrimination because her subsequent action placed Barnes's employment in jeopardy.

---

[5] The record does show that Barnes's female co-employee also had timecard issues; however, Means would regularly approve the co-employee's time and she was not at risk for termination like Barnes. (Doc. 23-1, p. 36, tp. 132:14-21).

After Barnes reported Means for her harassment and retaliation by refusing to approve his timecard punches, Means called Barnes into her office called him a snitch and loudly proclaimed that Barnes "snitched on her". (Doc. 23-1, p. 32, tpp. 119:14-120:4). Nancy, Barnes's director, heard and laughed at Means's statement. (Doc. 23-1, p. 32, tp. 120:4-6). After that, Means then threatened Barnes that if she [Means] got in trouble because Barnes reported her then she would have her son and nephew physically assault or "whoop" him. (Doc. 23-1. p. 32, tp. 120:6-17). Obviously, the prospect of being jumped and assaulted for two individuals made Barnes fear for his safety, and would dissuade a reasonable person from filing or supporting a charge of discrimination. (Doc 23-1, p. 53, tp. 204:16-21).

Consequently, for the reasons stated above, found in the Barnes's brief and supported by the record, Barnes has provided sufficient evidence that he incurred an "adverse action" that would dissuade a reasonable person from filing or supporting a charge of discrimination. Thus, the Magistrate's erred in its conclusion that Barnes did not produce sufficient evidence to support his retaliation claim.

### 2.    Barnes Produced Sufficient Evidence To Support Constructive Discharge.

The Magistrate erred in its conclusion that Barnes did not meet his burden in showing he was constructively discharged because it erred in its conclusion that Barned was not subjected to a hostile work environment. (Doc. 28, pp. 15-16). To prevail on constructive discharge, Barnes must show that the "the work environment

18

and conditions of employment were so unbearable that a reasonable person in that person's position would be compelled to resign." *Bryant v. Jones*, 575 F.3d 1281, 1298 (11th Cir. 2009). As stated earlier, Barnes introduced sufficient evidence for a reasonable jury to find that Barnes was subjected to harassment that was severe and pervasive enough to qualify as a hostile work environment. *See,* Section IV(A), *supra*. Specifically, Barnes has introduced sufficient evidence that he reported Means to Defendant on numerous occasions. *See*, Section IV(A)(1)-(3), *supra.*. Barnes also produced evidence that, despite his complaints, Means continued to harass him and began retaliating against him for reporting her. *See* Section IV(B)(1),*supra*. And as a result of that retaliation and harassment, Barnes endured great emotional distress to the point that it effected him outside of work and caused him to fear for his physical safety while at work. (Doc. 23-1, p. 48, tpp. 184:15-185:1, 185:17-186:7; p. 53 tpp. 204:16-21). Consequently, Barnes, as stated in his brief and supported by the record, has produced sufficient evidence for a reasonable jury to conclude that he suffered a constructive discharge due to the harassment and retaliation he suffered from Means.

## V.    <u>CONCLUSION</u>

As discussed above, the Magistrate erred in both findings of fact and legal conclusions that supported its recommendation to grant Defendant's motion for summary judgment and dismiss Barnes's claims. As stated above, Barnes has

submitted sufficient evidence for a reasonable jury to find that the harassment that he endured from Means was severe and pervasive enough to constitute a hostile work environment. *See¸* Section IV(A), *supra.* Furthermore, Barnes also presented sufficient evidence that he was not only subjected to an adverse action by defendant (*See,* Section IV(B)(1), *supra*), but the harassment and retaliation was so severe and caused Barnes such mental anguish that it a reasonable person in Barnes's position would be compelled to resign. *See*, Section IV(B)(2), *supra.* Consequently, Barnes objects to the Magistrate's report for the reasons stated above.

Respectfully Submitted:

*/s/ Jon-Kaden Mullen*
D. Jeremy Schatz
Jon-Kaden Mullen
*Attorneys for Plaintiff*

OF COUNSEL:
Virtus Law Group
2017 Morris Ave, Ste 100
Birmingham, AL 35203
js@vlgal.com
jm@vlgal.com
205-946-1924

## <u>CERTIFICATE OF SERVICE</u>

This is to certify that on September 16, 2025, a copy of the preceding has been served upon all counsel of record via the Electronic Mail system, Email and/or U.S. Mail.

> Warren B. Lighfoot, Jr.
> Brock Phillips
> Maynard Nexsen, P.C.
> 1901 Sixth Avenue North
> 1700 Regions/Harbert Plaza
> Birmingham, AL 35203
> wlightfoot@maynardsexsen.com
> bphillips@maynardsexsen.com
> *Attorney for Defendant*

> */s/ Jon-Kaden Mullen*
> OF COUNSEL